# Tillman *v.* De Lacy.

*Action for Damages for Conversion of Engine.*

1. *No rule defining when chattel loses its character as such and becomes a fixture.*—Different rules prevail, dependent on the relation of the parties, whether of grantor or grantee, landlord and tenant, or executor and heir, and also upon the uses for which the things are intended, whether for the purpose of agriculture, or trade or manufacture.

2. *Same.*—As between mortgagor and mortgagee, the same rules prevail substantially, as between vendor and vendee. There is no material difference whether the chattel is attached before or after the execution of the mortgage—except stronger evidence of intention to annex is required where the chattel is placed subsequent to the execution of the mortgage.

3. *Requisites to convert chattel into part of the realty*—are : 1st. Actual annexation to the realty, or something appurtenant thereto. 2nd. Application to the use or purpose to which that part of the realty, with which it is connected, is appropriated. 3rd. The intention of the party making the annexation to make a permanent accession to the freehold.

4. *Same.*—It may be regarded as a settled rule, that any chattel permanently annexed to the freehold, and which cannot be severed without material injury to the premises, becomes a part of the realty, irrespective of the intention with which it was attached.

5. *Relaxation of the rule.*—It may be required by the future growth and extension of manufacturing industries, that the requisite of physical attachment in or to the soil, be relaxed to the extent that the question of fixtures *vel non* shall depend on the nature and character of the act

[Tillman v. De Lacy.]

by which the structure is put in place, the policy of the law connected with its purpose, and the intentions of those concerned in the act.

6. *Permanency of attachment ; how determined.*—The permanency of the attachment does not depend on the strength, or force, or manner of the annexation to the freehold so much as upon its constancy, and upon the uses to which the attached chattel is adapted, the purposes for which designed, and the intention of the party in attaching it.

7. *Tendency of modern decisions.*—The current of modern decisions is in favor of viewing everything as a fixture which has been attached to the realty, with a view to the purposes for which it is held or employed, however slight or temporary the connection between them.

8. *Case at bar.*—In the case at bar the intention must control, the *onus* being on the plaintiff to show that the mortgagor intended that the engine should be a permanent accession to the freehold.

APPEAL from the Circuit Court of Bullock.

Tried before the Hon. H. D. CLAYTON.

This was an action for damages brought by William L. Tillman against J. W. De Lacy, for an alleged conversion by the latter of an engine, upon the following state of facts : Tillman sold a farm to W. D. and E. S. Grace, on time, taking the notes of the purchasers secured by mortgage upon the land sold. Default was made in the payment of these notes, and Tillman foreclosed his mortgage, purchasing the land at the foreclosure sale. Before default, and while the purchasers, W. D. and E. S. Grace, were in possession they placed an upright engine on the premises which they used in running a cotton gin ; after the foreclosure, and purchase of the premises by Tillman, the defendant, De Lacy, claiming to have purchased the engine from Grace, carried it off and converted it to his own use. The controversy was, whether the engine passed at the sale as a part of the realty, or whether it was a chattel which Grace had the right to sell to De Lacy. At the trial, the court gave the affirmative charge that if the jury believed the evidence they should find for the defendant. To the giving of this charge the plaintiff excepted, and asked the court to give the following written charge: "Although the engine testified about was what is called a portable engine, yet, if the jury shall find from the evidence that W. D. Grace placed said engine upon the premises testified about for the purpose of furnishing the motive power for ginning the crop of cotton to be grown on said premises, and such other cotton as might be brought on said premises to be ginned, with the intention of enhancing the value of said premises, and of rendering the use and occupation of said premises more convenient and profitable, and did use such engine for such purposes, and with such intention, then said engine became a part of the land on which it was so placed ; and if the jury shall further find from the evidence that said engine was, at the time of Tillman's purchase,

[Tillman v. De Lacy.]

upon said premises, then the said Tillman is entitled to recover of the defendant the value of said engine at the time of its removal, with interest on such value until now, if they find that De Lacy did remove and convert said engine as testified to." The court refused to give this charge, and the plaintiff excepted. The value of the engine was in evidence, as were the facts stated in the opinion, which sufficiently explain the issues involved. There was a verdict for the defendant, and the plaintiff takes this appeal, assigning as error, the charge given and the charge refused by the court.

JAMES T. NORMAN, for appellant.

S. W. MARTIN, *contra.*

CLOPTON, J.—Though there have been attempts in many cases to lay down general rules, no rule has been stated, which clearly defines when a chattel loses its original character, and becomes a part of the realty, to which it may be annexed. Different rules prevail, dependent on the relation of the parties; whether of grantor or grantee, landlord and tenant, or executor and heir; and also dependent on the uses for which the things are intended; whether for the purposes of agriculture, or of trade, or of manufacture. In the present case, the governing rules, so far as dependent on the relation, are those applicable between mortgagor and mortgagee; and to these the inquiry will be confined. As between mortgagor and mortgagee, substantially the same rules prevail as between vendor and vendee, with, it may be, somewhat more liberal application in favor of the mortgagee. There is no material difference, whether the chattel is attached before or after the execution of the mortgage; except that when the articles are annexed subsequently, and are of doubtful nature, it seems that stronger evidence of intention that it is an accession to the freehold, is required, than when annexed at the time of the making of the mortgage. *Gardner v. Finley*, 19 Barb. 317; 1 Jones on Mort., § 436.

The requisites to convert a chattel into a part of the realty are clearly and succinctly stated in *Quinby v. Manhatton C. & C. Co.*, 24 N. J. Eq. 26. 1st,—Actual annexation to the realty, or something appurtenant thereto. 2nd,—Application to the use or purpose to which that part of the realty, with which it is connected, is appropriated. 3rd,—The intention of the party making the annexation, to make a permanent accession to the freehold. *Teaff v. Hewitt*, 1 Ohio St. 511. It may be regarded as a settled rule, that any chattel, permanently annexed to the freehold, and which can not be severed without

material injury to the premises, becomes a part of the realty, irrespective of the intention with which it was attached. On this doctrine, it was held, in *Harkness v. Sears*, 24 Ala. 493, that *stationary* machinery, erected on land by the owner for his own use, and fixed in or to the ground, or to some substance already constituting a part of the freehold, is an immovable fixture, whether erected for the purpose of trade or of agriculture, and passes by the deed of the vendor, conveying the land. Most of the older and some of the modern cases hold that nothing short of such fixed annexation will suffice; and that no chattel will be regarded as a fixture, unless so firmly fastened to the freehold, that it can not be severed, without breaking or otherwise injuring the premises.

In consequence of the great increase of manufacturing establishments, in which the building has become an incident to the machinery which it contains, there are some cases, which hold that even a nominal attachment to the freehold is not requisite, when the machinery is essential to the use and enjoyment of the realty—where the building and machinery are, to all intents, and for all useful and practical purposes, essentially one. And it may be, that the future growth and extension of such industries will require a general relaxation of the requisite of physical attachment in or to the soil, to the extent that the question of fixtures *vel non* shall depend "on the nature and character of the act by which the structure is put in place, the policy of the law connected with its purpose, and the intentions of those concerned in the act." *Winslow v. Merchants Ins. Co.* 4 Met. 306; *Merg's Appeal*, 62 Penn. St. 28; *Wright v. Gray*, 73 Me. 297. Whilst it is not essential to a fixture, that the connection with the freehold shall be to such degree, that it cannot be severed without breaking, or lasting injury to the premises, actual annexation to some degree and in some mode, though it may be slight and indirect or constructive, ordinarily is regarded as requisite.

The permanency of the attachment does not depend on the strength, or force, or manner of the annexation to the freehold, so much as upon its constancy, and upon the uses to which the attached chattel is adapted; the purposes for which designed, and the intention of the party in attaching it. The current of modern decision is, "in favor of viewing everything as a fixture, which has been attached to the realty, with a view to the purposes for which it is held or employed, however slight or temporary the connection between them." 2 Smith's Lead. Cas. 221. The general tendency of decision regards the uses for which the chattel is designed, its adaptability to the part of the realty where it is placed, and the intention of the parties, whether for temporary use, or as a permanent accession to the

[Tillman v. De Lacy.]

freehold, as leading tests. The decision of each case rests on its particular facts and circumstances, which may account for the seeming discrepancies in many cases in the application of requisites for determining the character of a fixture. A review will not serve any useful or practical purpose, where the appellate court does not deal with the facts of the case, other than as they may elucidate the questions of law involved. *Capen v. Rickham*, 35 Conn. 88 ; *Farrar v. Chanfetete*, 5 Den. 527 ; *Crane v. Brigham*, 3 Stock 29.

The engine in controversy was put on the land by one of the mortgagors after the making of the mortgage. It was an upright engine and rested on brick or plank on the ground, being sustained in place by its own weight. A house was erected over it, the sills of which rested on the ground, not being set into the soil. The engine was connected by a band with the gin, situated in a house about eighty feet distant. The house containing the engine had no other opening than a small door and window, and the engine could not be removed therefrom without breaking the house for that purpose. It was used to furnish motive power for ginning the cotton raised on the premises, and the cotton of other persons for toll. On these facts, which were uncontroverted, the court gave the affirmative charge in favor of the defendant.

We concede that the engine is to be considered *prima facie* a chattel, being only attached to the land by its own weight, and not connected with any substance constituting a part of the realty, and its use being to furnish motive power to the gin, which, this court has held, is not a fixture. Under the circumstances of the case the intention must control, the *onus* being on the plaintiff to show, that the mortgagor intended, that the engine should be a permanent accession to the freehold, and an enhancement of its value—that is, should be a part of the land. The intention must be determined by the jury on all the facts and circumstances, including the manner of attachment and the use for which the engine was employed. Ewell on Fixtures, 22, 32. The charge of the court withdrew the fact of intention from the consideration of the jury ; a fact to be inferred from the evidence and material to the decision of the case. The charge requested by the plaintiff was calculated to mislead, and was properly refused.

Reversed and remanded.