# Wilk *v.* Key, Simmons & Co.

*Statutory Trial of the Right of Property.*

1. *Motion for a new trial; recital of ruling in bill of exceptions; appeal.*—On an appeal from a judgment, when the error assigned is that
the court improperly refused to grant a new trial, the statement in
the bill of exceptions, following the motion for a new trial, that "the
court refused to grant said motion," is a sufficient statement of the
decision of the court, to present such ruling for the consideration of
the appellate court.

2. *Fraudulent purchase of goods; when vendor may rescind contract.*
To authorize a vendor of goods sold on credit to rescind the contract,
and to reclaim the goods, it must appear that the purchaser was, at
the time, insolvent or in failing circumstances; that he had no inten-
tion of paying for the goods, or reasonable expectation of being able
to do so; and that he intentionally concealed these facts or made
fraudulent representations in regard to them.

3. *Same; same; burden of proof as between the original vendor and a
sub-purchaser.*—When the vendor of goods sold on credit, seeks to re-
scind the contract and reclaim the goods, on the ground of fraud on

[Wilk v. Key, Simmons & Co.]

the part of his vendee in making the purchase, and there is an issue between said vendor and a sub-purchaser from the alleged fraudulent vendee, who interposed a claim to said goods, the burden of proof is on the original vendor in the first instance to show that the first vendee being insolvent obtained the goods on credit by misrepresentation or fraudulent concealment of his financial condition, with no reasonable expectation of being able to pay for them. This proof being made, the burden is shifted to the sub-purchaser to prove that he paid value for the goods, and upon making this proof, the *onus* is again shifted to the original vendor to prove that the sub-purchaser had notice of the fraud of the original vendee, when he purchased from him, or before he paid the purchase price.

4. *Same; same.*—In such a case, if the sub-purchaser had no notice of the fraud by which his immediate vendor acquired the goods, and no notice of facts which, if diligently prosecuted, would have led to such knowledge, and he paid value for the goods, there can be no recovery of the goods by the original vendor as against the sub-purchaser, even though the transaction may have been fraudulent as to the creditors of the original vendee; since such case is not governed by the principles which apply when the sale of goods by an insolvent debtor to a creditor is sought to be set aside by other creditors as fraudulent and void.

5. *Same; same; what necessary to constitute purchaser for value.* In such a case, whether the sub-purchaser paid cash in whole or in part for the goods, or took them in payment of a *bona fide* debt due him from his vendor, he would be a purchaser for value, within the rule above announced.

APPEAL from the Circuit Court of Henry.

Tried before the Hon. J. W. FOSTER.

This was a statutory trial of the right of property.

The appellees brought an action of detinue against one E. Crine, for the recovery of certain specified articles of merchandise, and upon the seizure by the sheriff under a writ of detinue, appellant, C. Wilk, interposed a claim to said property, making affidavit and bond as required by the statute.

On the trial of the cause, there were verdict and judgment for the plaintiff. A motion was then made by the claimant for a new trial, which motion was overruled. On the present appeal, prosecuted by the claimants, the only error assigned is the refusal of the court to grant a new trial.

H. A. PEARCE, for appellant.—The motion for a new trial in this case should have been granted.—*Cobb v.*

*Malone,* 92 Ala. 630 ; *Holland v. Howard,* 105 Ala. 538 ; *Bray v. Ely,* 105 Ala. 553. The evidence in the case did not show that the vendor was entitled to a rescission of the contract, and to reclaim the goods involved in the suit.—*Darby v. Kroell,* 92 Ala. 607 ; *Hornthall v. Schonfeld,* 79 Ala. 107 ; *LeGrand v. Eufaula Nat. Bank,* 81 Ala. 123 ; *Robinson v. Levi,* 81 Ala. 134.

The plaintiff in the present suit did not meet the burden which the law placed upon her, in order to reclaim the property sold to the claimant's vendor ; and the evidence shows that the claimant was a purchaser for value and entitled to the goods in controversy. *Traywick v. Keeble,* 93 Ala. 498 ; *Robinson v. Levi,* 81 Ala. 134 ; *Spira v. Hornthall,* 77 Ala. 137.

SOLLIE & KIRKLAND and ESPY & FARMER, *contra,* cited *Levy v. Williams,* 79 Ala. 171 ; *Lehman v. Kelly,* 68 Ala. 192 ; *Loeb v. Flash,* 65 Ala. 526.

BRICKELL, C. J.—This appeal is from the original judgment rendered in the cause, and the only error assigned is that the court below improperly refused to grant a new trial therein on motion of appellant. The statement in the bill of exceptions that "the court refused to grant said motion" is a sufficient statement of the decision of the court rendered on a motion for a new trial under Acts of 1890-91, p. 779 ; the statute not requiring that the order or judgment of the court granting or refusing the motion shall be set out in full in the bill of exceptions.

The contest was between a vendor of chattels and a sub-purchaser from his alleged fraudulent vendee, and was instituted by the filing of an affidavit and claim bond by appellant to try the right of property in the goods, which had been seized under a writ of detinue sued out by appellee. It has been repeatedly declared by this court that to authorize the rescission of a sale of chattels on the ground of fraud on the part of the vendee, it must appear, (1) that the purchaser was at the time of the transaction insolvent or in failing circumstances ; (2) that at the time of the purchase of the goods he had a pre-conceived design not to pay for them, or no reasonable expectation of being able to pay for them ; (3) that he intentionally concealed these facts, or made a

fraudulent representation in regard to them.—*Darby v. Kroell*, 92 Ala. 608; *LeGrand & Hall v. Eufaula Nat. Bank*, 81 Ala. 129; *Kyle v. Ward, Ib.* 120; *Hornthall v. Schonfeld*, 79 Ala. 107; *Loeb v. Flash*, 65 Ala. 526. When the contest is between the vendor and a sub-purchaser from the alleged fraudulent vendee, the burden of proof is on the plaintiff, or original vendor, in the first instance, to show that the first vendee, being insolvent or in failing circumstances, obtained the goods on credit by misrepresentation or fraudulent concealment of his financial condition, with no intention or reasonable expectation of paying for them. When this proof is made by the plaintiff it is then incumbent on the sub-purchaser to show that he paid value for the goods. The *onus* is then again shifted upon the plaintiff to prove that the sub-purchaser had notice of the fraud of the original vendee when he purchased from him or before he paid the purchase money.—*Kyle v. Ward*, 81 Ala. 121. It is entirely immaterial to the inquiries raised by the issue in such cases whether the transaction between the original vendee and his sub-purchaser would withstand an attack by the creditors of the former, since the original vendor, having elected to rescind the contract, does not occupy the relation of creditor. If the sub-purchaser had no notice of the fraud by which his immediate vendor acquired the goods, and no knowledge of facts which should have put him on inquiry which, if diligently prosecuted, would have led to a knowledge of plaintiff's claim, and if he paid value for the goods, there can be no recovery against him, notwithstanding the transaction may have been fraudulent as to the creditors of the original vendee. *Traywick v. Keeble & Co.*, 93 Ala. 498. And whether he paid cash, in whole or in part, for the goods, or took them in payment of a debt due to him from his vendor, he would be a purchaser for value within the meaning of the rule above stated.—*Robinson v. Fairbanks & Co.*, 81 Ala. 132. The testimony of the plaintiff tended to show that the value of the goods in controversy was $109; that at the time he purchased them, September 7, 1895, Keyton, the original vendee, was insolvent, but that he made no representations as to his financial condition; that when seized under the writ the goods were found, covered with sacks, in the store-room of one Crine, a

[Wilk v. Key, Simmons & Co.]

brother-in-law of defendant. Conceding that this testimony was sufficient to cast on the defendant the burden of showing that he had paid value for the goods, this burden was fully sustained by him. The uncontradicted evidence is that Keyton was indebted to defendant in the sum of $200, due by two promissory notes, and that about October 1, 1895, defendant placed the notes for collection in the hands of an attorney, who, being unable to collect the money, received from Keyton in payment of the notes the goods in controversy, together with other goods of a similar kind, amounting, at their invoice value, to $256, and paid Keyton the difference, $56, in cash; that the goods were sent from Headland, where Keyton resided, to Dothan, where the defendant was in business, and the latter not having room in his saloon to store the goods, obtained permission from Crine to place them in his store-room; and that defendant had no knowledge, at the time, as to Keyton's financial condition, but believed he was solvent. This testimony was undisputed, and no effort was made to contradict it. It was clearly sufficient to cast on the plaintiff the burden of proving that defendant had notice, actual or constructive, of the alleged fraud by which Keyton acquired possession of the goods, and if its truth had been admitted, it would have justified the giving of the general charge in favor of the defendant. Until some evidence was introduced by plaintiff tending to show that defendant had such notice, no *prima facie* case was made out. There is nothing in the record as to the circumstances attending the transaction between Keyton and the defendant that tends to weaken this testimony, or that would justify a jury in ignoring it. Allowing all presumptions of the correctness of the verdict that might reasonably be drawn from all the evidence, the preponderance of the evidence against it is so decided that we are clearly convinced that it was wrong and unjust, and that a new trial should have been granted.

The judgment of the circuit court is reversed, and a judgment here rendered granting a new trial, and remanding the cause.

Reversed and remanded.